TATE TERRACE REALTY INVESTORS, INC., Petitioner v. CURRITUCK COUNTY
AND ITS BOARD OF COMMISSIONERS, Respondents

No. COA96-731

(Filed 19 August 1997)

**1. Appeal and Error §§ 426, 422 (NCI4th)— type size restric-
tions—briefing of arguments not cross-assigned as error—
imposition of double costs**

Petitioner-appellee's violation of type size restrictions
imposed on briefs submitted to the Court of Appeals and its dis-
cussion of issues not in respondent-appellant's brief without pre-
serving those issues by cross-assignment of error resulted in the
imposition of double costs pursuant to N.C.R.App. P. 25(b) and
34(b)(2)(a).

**2. Zoning § 121 (NCI4th); Administrative Law and Procedure
§ 60 (NCI4th)— quasi-judicial boards—appellate review by
superior court and Court of Appeals—nature of review**

A legislative board such as a board of commissioners sits as
a quasi-judicial body when it grants or denies a special use permit
and its decisions are subject to review by the superior court by
proceedings in the nature of certiorari, wherein the superior
court sits as an appellate court. The principles of the North
Carolina Administrative Procedures Act do not govern, but are
"highly pertinent." The task of a court reviewing a decision made
by a town board sitting as a quasi-judicial body includes review-
ing the record for errors in law; insuring that procedures speci-
fied by law in statute and ordinance are followed; insuring that
appropriate due process rights of a petitioner are protected;
insuring that decisions of town boards are supported by compe-
tent, material and substantial evidence in the whole record; and
insuring that decisions are not arbitrary and capricious. The
quasi-judicial body's findings of fact are binding if supported by
substantial competent evidence presented at the hearing and the
reviewing court may not substitute its own judgment; however,
information not revealed at a public hearing and therefore not
subject to refutation is not competent evidence and cannot sup-
port a finding of the Board. The Court of Appeals appellate
review of the superior court judgment, being derivative of the
power of the superior court, has been described as determining
whether the trial court exercised the appropriate scope of review
and, if appropriate, whether the court did so properly.

**3. Zoning § 71 (NCI4th)— Board of Commissioners—special use permit—denial not arbitrary and capricious—substantial competent evidence to support finding**

The trial court erred in reversing the Currituck County Board of Commissioner's denial of petitioner's application for a sketch/plan special use permit for a subdivision based on a determination that the decision of the Board was not supported by substantial evidence where the court's order indicates that it reviewed the whole record; the court having exercised the appropriate scope of review, the question becomes whether it did so properly; information was provided to the Board by the Currituck County Planning Director (Simoneau) at a hearing on 3 October 1994, including a summary of comments from the Currituck County Superintendent of Public Schools; that testimony and accompanying material indicated that a new subdivision of this size would have a dramatic adverse effect on the Currituck County School system; the matter was scheduled for an additional public hearing on 5 December 1994; petitioner requested a continuation of the application on that date; and a public hearing was held on 5 December, during which a letter was submitted from the school superintendent concerning the long range needs of the system; the Board was informed of petitioner's request for a continuance and the request was granted; and the application was denied on 6 February based solely on provisions of the county development ordinance concerning proposed development which would exceed the County's ability to provide adequate facilities, including schools. Petitioner's contention that the information presented at the 5 December meeting was not properly before the Board and thus not part of the whole record was not sustained by the record because the hearing was conducted pursuant to public notice, petitioner did not participate, and the Board received certain information and thereafter continued further action pursuant to petitioner's request. Petitioner waived any right to object to the competency of the testimony by its failure to participate in the duly noticed public hearing. Furthermore, any error in receiving evidence at the 5 December hearing was harmless because the planning director again discussed the proposed subdivision at the 6 February meeting, a staff analysis was received which recommended that the permit be denied based upon inadequate public school facilities, and the findings which did not refer to the 5 December hearing were based upon competent evidence received at other meetings.

**4. Zoning § 71 (NCI4th)— denial of special use permit—subdivision exceeding school capacity—not arbitrary and capricious**

The superior court erred by determining that the Currituck County Board of Commissioners acted arbitrarily and capriciously in denying an application for a special use permit for a new subdivision where there was substantial competent evidence in the record supporting the Board's findings, which sustained its conclusion that the proposed subdivision failed to meet the provisions of the county development ordinance because it exceeded the county's ability to provide adequate public school facilities. Although the trial court ruled that the Board's action was erroneous as a matter of law, the court identified no statute or principle of law allegedly violated.

**5. Appeal and Error § 446 (NCI4th)— denial of special use permit for new subdivision—issues not raised before Board—not raised as cross-assignments of error—not considered**

In an appeal from a superior court order reversing the Currituck County Board of Commissioners' denial of petitioner's application for a special use permit for a new subdivision, petitioner-appellee waived contentions supporting the superior court order by not setting forth the issues in the record on appeal as cross-assignments of error. Moreover, the record contains no indication that petitioner raised any of these contentions before the Board prior to the denial of its application, nor, with one exception, were petitioner's alternative arguments raised in the petition, and the exception was not addressed in the court's order. The superior court, sitting as an appellate court, may not consider a matter not addressed by the Board, and the Court of Appeals in its derivative appellate jurisdiction may not consider matters not raised below.

Appeal by Respondents from judgment entered 26 December 1995 by Judge William C. Griffin, Jr. in Currituck County Superior Court. Heard in the Court of Appeals 25 February 1997.

TATE TERRACE REALTY INVESTORS, INC. v. CURRITUCK COUNTY

[127 N.C. App. 212 (1997)]

*Hornthal, Riley, Ellis & Maland, L.L.P., by M.H. Hood Ellis and John D. Leidy, and Michael B. Brough & Associates by Michael B. Brough for petitioner-appellee.*

*Currituck County Attorney William H. Romm, Jr., and Poyner & Spruill, L.L.P., by H. Glenn Dunn and Timothy P. Sullivan for respondent-appellant.*

JOHN, Judge.

Respondents appeal judgment entered upon Writ of Certiorari issued 26 December 1995 by the trial court. Respondents contend the court erred by (1) determining the denial by the Currituck County Board of Commissioners (the Board) of petitioner's application for a sketch plan/special use permit (permit) was not supported by competent, material and substantial evidence, was erroneous as a matter of law, and was arbitrary and capricious, (2) ordering the Board to issue the permit, and (3) taxing costs to respondents. We reverse the trial court.

Relevant facts and procedural history are as follows: Petitioner Tate Terrace purchased a 519.7 acre tract in northern Currituck County (the property) at public auction on 22 April 1994. The sale was confirmed 29 April 1994 by the U.S. Bankruptcy Court for the Eastern District of North Carolina and petitioner received a deed to the property 10 June 1994.

Petitioner's predecessor in title, Moyock Investment Group, had obtained sketch plan approval from the Board 17 October 1988 to construct a 429 lot residential subdivision designated "Country Side" on the property along with an eighteen-hole golf course. Respondents concede petitioner purchased the property with a vested right to develop it in accordance with this sketch plan as approved.

Petitioner's representatives met with Currituck County planning staff to discuss development of the property as an 800 lot planned residential development without a golf course. Petitioner learned such modifications to the approved sketch plan would require the property to be rezoned from agriculture ("A") to basic residential ("R") or mixed residential ("RA"), followed by approval of a special use permit/sketch plan allowing a planned residential development (PRD). Petitioner submitted an application 19 July 1994 seeking to rezone the property from "A" to "R," but subsequently requested in a letter dated 8 August 1994 that action by the Board thereon be delayed until September.

On 2 September 1994, in lieu of its rezoning request, petitioner applied for a special use permit and sketch plan approval of a 601 lot subdivision called "The Plantations." The new subdivision was not a PRD and consequently rezoning was not required by the Currituck County Unified Development Ordinance (UDO). Nonetheless, because the development qualified as a "major subdivision" under the UDO and the property was zoned "A," it was necessary for the Board to issue a special use permit and approve the sketch plan.

In August 1994, the Planning Board suggested amending UDO § 1402(2) in response to substantial growth in the County. It was recommended that the Board be allowed to deny a special use permit if a proposed development more probably than not would "exceed the county's ability to provide adequate facilities, including, but not limited to, schools, fire and rescue, law enforcement, and other county facilities." A public hearing concerning the amendment was conducted 3 October 1994, and the proposal was adopted at the Board's 17 October 1994 meeting and codified as UDO § 1402(2)(e).

While the amendment was under consideration, the special use/sketch plan approval application of petitioners for The Plantations was also being reviewed. It likewise was accorded a public hearing 3 October 1994, and was scheduled for consideration by the Board at its 17 October 1994 meeting. However, petitioner requested the matter be continued until the next scheduled meeting, 7 November 1994, and thereafter received additional delays. A further public hearing was conducted 5 December 1994. Finally, on 6 February 1995, the Board unanimously denied petitioner's application based solely upon the provisions of § 1402(2)(e), concluding that the proposed development exceeded "the county's ability to provide adequate public school facilities."

On 20 March 1995, petitioner filed a Petition for Writ of Certiorari pursuant to N.C.G.S. § 153A-340 (1991) in Currituck County Superior Court, seeking review of the 6 February decision. A writ was issued 21 March 1995. Following respondents' 2 May 1995 answer, petitioner filed an Amended Petition for Writ of Certiorari (Petition) on 18 August 1995.

The matter came on for hearing 16 October 1995, and in an order filed 26 December 1995, the trial court reversed the decision of the Board and ordered respondents to issue the sketch plan/special use permit for "The Plantations." Respondents filed timely notice of appeal.

I.

[1] We note as a threshold matter that petitioner has submitted a brief utilizing fourteen characters per inch type size as opposed to the ten characters per inch mandated by N.C.R. App. P. 26(g). Petitioner's appellate brief as submitted is of the maximum length allowed under N.C.R. App. P. 28(j). Use of the diminutive type thus in effect permitted petitioner to increase the length of its presentation to forty percent more than allowed by our rules. We have previously indicated that violation of the type size restriction would result in the imposition of sanctions pursuant to N.C.R. App. P. 25(b) and 34(b). *See Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 147, 468 S.E.2d 269, 273 (1996).

In addition, a considerable portion of petitioner-appellee's brief is devoted to issues not addressed in respondent-appellant's brief and not preserved by cross assignment of error. *See* N.C.R. App. P. 28(c) (additional questions raised by appellee's brief limited to those presented by cross assignment of error). Petitioner's improper submission of these new arguments moved respondent to submit a reply brief that presumably would not otherwise have been forthcoming. *See* N.C.R. App. P. 28(h)(1).

Because we reverse the order of the superior court, petitioner is required to bear the costs of this appeal. However, in view of the violations of our appellate rules noted above, we exercise our powers pursuant to N.C.R. App. P. 25(b) and 34(b)(2)(a) and impose double costs, the additional amount to be paid by counsel for petitioner. *See Roberts v. First Citizens Bank and Trust Co.*, 124 N.C. App. 713, 715-16, 478 S.E.2d 809, 811 (1996), *supersedeas granted*, 345 N.C. 346, 483 S.E.2d 176 (1997).

II.

[2] When a legislative body such as the Board grants or denies a special use permit, it is sitting as a quasi-judicial body. *See Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). Such decisions "shall be subject to review by the superior court by proceedings in the nature of certiorari," G.S. § 153A-340, wherein the superior court sits as an appellate court, and not as a trier of facts. *Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 135-36, 431 S.E.2d 183, 186 (1993).

Although the superior court's review of the decision of a local board functioning as a quasi-judicial body is not governed by the North Carolina Administrative Procedures Act (the APA), N.C.G.S. § 150B-1 *et seq.* (1995), the principles of the APA are "highly pertinent" to the process of judicial review. *See Concrete Co.*, 299 N.C. at 625, 265 S.E.2d at 382. As such, "the task of a court reviewing a decision . . . made by a town board sitting as a quasi-judicial body," *id.* at 626, 265 S.E.2d at 382, includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Charlotte Yacht Club v. County of Mecklenburg*, 64 N.C. App. 477, 479, 307 S.E.2d 595, 597 (1983) (quoting *Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383). However, the scope of review is limited to errors alleged to have occurred before the local board. *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 63, 344 S.E.2d 272, 279 (1986).

When it is alleged that the action of a quasi-judicial body was not supported by substantial evidence or was arbitrary and capricious, the reviewing court must apply the "whole record" test. *Ballas v. Town of Weaverville*, 121 N.C. App. 346, 349, 465 S.E.2d 324, 326 (1996). Further, the body's findings of fact are binding if supported by substantial competent evidence presented at the hearing. *Capricorn*, 334 N.C. at 135-36, 341 S.E.2d at 186. The reviewing court may not substitute its own judgment for that of the body when the record contains competent and substantial evidence supporting the findings indicated by the quasi-judicial body, even though conflicting evidence in the record would have allowed the court to reach a contrary finding if proceeding *de novo. CG&T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.*

As our Supreme Court has explained,

a zoning board of adjustment, or a board of aldermen conducting a quasi-judicial hearing, can dispense with no essential element of a fair trial: (1) The party whose rights are being determined must be given the opportunity to offer evidence, cross-examine adverse witnesses, inspect documents, and offer evidence in explanation and rebuttal; (2) absent stipulations or waiver such a board may not base findings as to the existence or nonexistence of crucial facts upon unsworn statements; and (3) crucial findings of fact which are unsupported by competent, material and substantial evidence in view of the entire record as submitted cannot stand.

*Refining Co. v. Board of Aldermen*, 284 N.C. 458, 470, 202 S.E.2d 129, 137 (1974) (citations omitted). Information not revealed at a public hearing and therefore not subject to refutation is not competent evidence, and cannot support a finding of the Board. *Ballas*, 121 N.C. App. at 350, 465 S.E.2d at 327.

This Court's appellate review of a superior court judgment on a writ of certiorari considering the action of a quasi-judicial body, being derivative of the power of the superior court to review the action, *Sherrill v. Town of Wrightsville Beach*, 76 N.C. App. 646, 649, 334 S.E.2d 103, 105 (1985), is likewise governed by analogy to the APA. This Court must examine "the trial court's order for error of law" just as with any other civil case. *See Act-Up Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *Amanini v. N.C. Dep't of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994)). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.* (quoting *Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118-19).

III.

[3] The trial court's order provided that the Board's denial of petitioner's application "was not supported by competent, material and substantial evidence, was erroneous as a matter of law, and was arbitrary and capricious." Guided by the rules stated above, we first address respondents' contention the trial court erred in determining the decision of the Board was not supported by substantial evidence.

The court's order indicates it reviewed the whole record in considering this question. The court having exercised the appropriate scope of review, *see Ballas*, 121 N.C. App. at 349, 465 S.E.2d at 326, we proceed to decide whether it "did so properly." *Act-Up Triangle*, 345 N.C. at 706, 483 S.E.2d at 392.

The "whole record" indicates two public hearings were conducted on petitioner's application in addition to information presented to the Board at its 5 February 1995 meeting when final action was taken.

First, at the 3 October 1994 hearing, Jack Simoneau (Simoneau), Currituck County Planning Director, summarized under oath portions of written comments received from Ronnie Capps (Capps), Currituck County Superintendent of Public Schools. The written text of Capps' observations, as well as other information referred to by Simoneau at the hearing, were provided to the Board.

Simoneau's testimony and the accompanying material indicated that a new subdivision the size of The Plantations would have a dramatic adverse effect on the Currituck County School System (the System). On the same occasion, Alan Resh (Resh), a representative of petitioner, estimated that The Plantations would generate 312 additional students upon completion. Resh acknowledged that the figure, which represented a 10% increase over the August 1994 enrollment, was based upon an overall county average of "students per unit" and thus factored in numerous vacation homes on the Outer Banks.

Next, the matter was scheduled for an additional public hearing and for action on 5 December 1994. On that date, in a letter to Simoneau, petitioner requested "continuation of the sketch plan/special use permit application" until the Board's 19 December 1994 meeting so that petitioner might engage in a "work session" with the newly elected Board to discuss the proposal prior to final action. However, the public hearing was conducted, during which Simoneau submitted a letter from Capps concerning the long range needs of the System. Minutes of the hearing reflect that Simoneau informed the Board regarding the letter he had received that day from petitioner requesting a "continuation." The Board then voted to continue any action on the application until a later date.

Interestingly, petitioner maintains that information presented at the 5 December public hearing was improperly considered by the Board in that petitioner was told in advance the hearing would be continued and thus had no representative in attendance. However,

save for petitioner's bald assertion in its appellate brief, the record contains no evidence that the Board, or any individual authorized to act on its behalf, canceled the public hearing or gave any assurance to petitioner that such would be the case. Indeed, petitioner has cited no authority suggesting the Board might properly cancel a duly advertised public hearing based upon the *ex parte* request of petitioner.

Moreover, petitioner in its brief acknowledges "Tate's engineer went to the meeting," *see Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890 (1979) ("[s]tatements of fact made in briefs, and legitimate inferences therefrom, may be assumed as true as against the party asserting them"), but insists the engineer was in attendance for "other clients" and not for "this hearing." While petitioner further accurately asserts "nothing in the record" indicates the engineer was "given any opportunity to participate," likewise nothing in the record reflects any attempt at intervention in the hearing by the engineer or any objection from him as to the Board's conducting the public hearing and receiving information on petitioner's application. In addition, the advance legal notices advertising the hearing indicated the purpose thereof was to conduct a public hearing regarding petitioner's application.

In short, based upon the record, the hearing was conducted on 5 December 1994 pursuant to public notice, petitioner did not participate, and the Board received certain information and thereafter continued further action on petitioner's application pursuant to the latter's request. The record fails to sustain petitioner's contention that information presented at the 5 December 1994 public hearing was not properly before the Board and thus not a portion of the "whole record" to which a reviewing court might look in determining whether substantial evidence supported the Board's decision.

Petitioner also argues Capp's 5 December letter was *incompetent* evidence because it was not obtained under oath and because petitioner had no opportunity to cross examine Capps. Petitioner cites UDO § 22 as incorporating these requirements, but the text of this ordinance is not included in the record. *See* N.C.R. App. P. 9(a) (appellate review "is solely upon the record on appeal"). Nonetheless, our Supreme Court has included cross-examination of adverse witnesses as one of the "essential element[s] of a fair trial" accorded "[t]he party whose rights are being determined" at a quasi-judicial hearing. *Refining Co.*, 284 N.C. at 470, 202 S.E.2d at 137. However, petitioner, by its failure to participate in the duly noticed

public hearing, waived any right to object to the competency of the testimony. *See Craver. v. Board of Adjustment*, 267 N.C. 40, 42, 147 S.E.2d 599, 601 (1966) (permit applicant who voluntarily participated without objection in hearing in which testimony was presented without witnesses being under oath and who likewise presented unsworn testimony waives right later to complain of denial of right of cross-examination).

Further, assuming *arguendo* receipt by the Board of evidence at the 5 December 1994 hearing was improper, any such error was harmless. Notwithstanding a particular finding of fact being unsupported by material and competent evidence, the action of a quasi-judicial body will be sustained if supported by remaining findings of fact upheld by substantial evidence, the erroneous finding being treated as mere surplusage. *See Torain v. Fordham Drug Co.*, 79 N.C. App. 572, 576, 340 S.E.2d 111, 114, (1986) ("[w]here, after erroneous factual findings have been excluded, there remain sufficient findings of fact based on competent evidence to support the [Industrial] Commission's conclusions, its ruling will not be disturbed"). Our review of the Board's findings not referencing the 5 December 1994 hearing indicates that each was based upon competent evidence received at either the 3 October 1994 public hearing or the Board's 6 February 1995 meeting.

Finally, at the Board's 6 February 1995 meeting, the record reflects Simoneau again discussed the proposed subdivision. In addition, the Board received a Currituck County Planning Department staff analysis of petitioner's application recommending that the permit be denied based upon inadequate public school facilities.

In sum, notwithstanding petitioner's challenge to information presented at the 5 December 1994 hearing, our review of the "whole record" reveals substantial evidence supporting the Board's findings of fact. These findings are thus binding on appeal, *Capricorn*, 334 N.C. at 135-36, 342 S.E.2d at 186, and sustain the Board's decision to deny petitioner's permit application. The trial court therefore erred in reversing the Board on grounds the denial was not supported by substantial evidence.

[4] Although again exercising the appropriate scope of review, *see Act-Up Triangle*, 345 N.C. at 706, 483 S.E.2d at 392, the trial court also erred in its determination the Board's decision was arbitrary and capricious. Black's Law Dictionary 105 (6th ed. 1990) defines "arbitrary and capricious" as

TATE TERRACE REALTY INVESTORS, INC. v. CURRITUCK COUNTY

[127 N.C. App. 212 (1997)]

[c]haracterization of a decision or action taken by an administrative agency or inferior court meaning willful and unreasonable action without consideration or in disregard of facts or law or without determining principle.

An arbitrary decision therefore is one where there is no substantial relationship between the facts in the record and the conclusions reached by the quasi-judicial body. As detailed above, substantial competent evidence in the record supported the Board's findings which in turn sustained its conclusion that petitioner's proposed development "fail[ed] to meet the provision of Section 1402(2)(e) of the UDO because it exceeds the county's ability to provide adequate public school facilities." The decision of the Board was neither arbitrary nor capricious.

Lastly, respondents contend the trial court erred in ruling that the Board's denial of petitioner's application was erroneous as a matter of law. Again, we agree.

The trial court's order identified no statute or principle of law allegedly violated, but presumably characterized the Board's decision as erroneous as a matter of law based upon its further determinations that the denial of petitioner's application was arbitrary and capricious and was not supported by substantial evidence. As we have held the Board's decision was supported by substantial competent evidence in the record and was neither arbitrary nor capricious, it necessarily follows that the trial court erred in concluding the action of the Board was erroneous as a matter of law.

IV.

[5] As noted earlier, petitioner asserts certain contentions in defense of the trial court's order. Petitioner argues (1) it possessed a vested right to develop the property, (2) UDO § 1402(2)(e) could not be retroactively applied to petitioner's application, (3) the amended ordinance constituted a statutory moratorium on growth in the County which the Board had no authority to enact, (4) the obligation of the County to provide for educational facilities is mandatory, and (5) the County could not constitutionally deny a development plan on the basis of inadequate school facilities in the absence of plans to construct additional facilities to accommodate the County's growth. However, none of the foregoing is set forth in the record on appeal as a cross-assignment of error thereby constituting an alternative basis in law for supporting the trial court's order. *See* N.C.R. App. P.

9(a)(1)(k), 10(d). Petitioner's failure to raise these questions by cross-assignment of error "waives our consideration on appeal." *Williams v. N.C. Dept. of Economic and Community Development,* 119 N.C. App. 535, 539, 458 S.E.2d 750, 753 (1995) (quoting *In the Matter of Appeal from Civil Penalty,* 92 N.C. App. 1, 5-6, 373 S.E.2d 572, 575 (1988), *rev'd on other grounds,* 324 N.C. 373, 379 S.E.2d 30 (1989)).

Notwithstanding, we further observe the record contains no indication petitioner raised any of these contentions before the Board prior to denial of its application, nor, save for the vested rights issue, were petitioner's alternative arguments raised in the Petition, the vested rights issue itself not being addressed in the court's order. The superior court in its "posture of an appellate court," *Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383, on review by writ of certiorari, may not consider a matter not addressed by the Board, *Godfrey,* 317 N.C. at 63, 344 S.E.2d at 279. Nor may this Court through our derivative appellate jurisdiction consider matters not raised below. *Sherrill,* 76 N.C. App. at 649, 334 S.E.2d at 105. *See also Weil v. Herring,* 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) (where theory argued on appeal not raised before the trial court, "the law does not permit parties to swap horses between courts in order to get a better mount" before appellate court), and *State v. Hunter,* 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) (theory upon which case is tried in lower court "must control in construing the record and determining the validity of the exceptions").

V.

Having held the trial court erred in reversing the decision of the Board, we need not reach the further question of the court's authority to order petitioner's application to be granted as opposed to remanding the matter to the Board; however, we reverse the taxing of costs to respondents, *see* N.C.G.S. § 6-20 (1986), as having been imposed in consequence of the court's erroneous reversal of the Board.

Reversed.

Judges EAGLES and COZORT concur.

Judge COZORT concurred prior to 31 July 1997.