ELEANOR COFFEY AND KRISTEN COFFEY WEST, PLAINTIFFS v. TOWN OF WAYNESVILLE, DEFENDANT

No. COA00-545

(Filed 5 June 2001)

## 1. Cities and Towns— demolition—quasi-judicial decision—standard of review

The standard of review applied in reviewing a town board of alderman's quasi-judicial decision whether to issue a demolition order under N.C.G.S. § 160A-429 is based on a de novo review if petitioner contends the legislative body's decision was based on an error of law, or is based on the whole record test if petitioner contends the legislative body's decision was not supported by the evidence or is arbitrary and capricious.

## 2. Cities and Towns— demolition—compliance with statutory procedures—decision not arbitrary or capricious

A town board of aldermen did not act arbitrarily or capriciously by condemning and then requiring demolition of a building owned by plaintiffs, because: (1) defendant complied with the procedures set forth under N.C.G.S. §§ 160A-424 to 160A-429; (2) the code enforcement official conducted an inspection of the

property on 25 March 1998, satisfying the requirements of N.C.G.S. § 160A-426 for condemnation of plaintiffs' building; and (3) after nearly a full month passed and no corrective action was taken, the official sent plaintiffs a notice of hearing and a hearing was held determining the property should be demolished based on the length of time the property had been in unsafe condition and the unlikelihood that plaintiffs would actually take sufficient steps to improve the property.

**3. Cities and Towns— demolition—reasonable time to repair property**

The trial court did not err by affirming the town board of alderman's order requiring demolition of a building owned by plaintiffs even though plaintiffs contend defendant town failed to provide plaintiffs with a reasonable amount of time to repair the property in order to bring it up to standard and avoid demolition, because: (1) plaintiffs were given forty days from the posting of the notice of unsafe structure to the hearing before the code enforcement official to take steps toward repairing the building in an attempt to influence the code enforcement official's decision to either repair, close, vacate, or demolish the building; and (2) there is no evidence plaintiffs contacted anyone for the formulation of plans to restore the building, nor sought the required permits to undertake repairs to the building during this forty-day period.

Appeal by plaintiffs from order entered 6 January 2000 by Judge Zoro J. Guice, Jr. in Haywood County Superior Court. Heard in the Court of Appeals 5 February 2001.

*Patrick U. Smathers, for plaintiffs-appellants.*

*Russell & King, P.A., by Sandra M. King, for defendant-appellee.*

CAMPBELL, Judge.

Plaintiffs Eleanor Coffey and Kristen Coffey West appeal the trial court's order affirming the Town of Waynesville Board of Alderman's ("Board") order requiring demolition of a building owned by plaintiffs. We affirm the trial court's order.

Plaintiffs are the record owners of real property and an attached building located at 250 Westwood Circle, Waynesville ("Town"), North

Carolina. Based on its deteriorating and eventually dangerous condition, the building has been a subject of concern to local government for over twenty years, during which time it has not been occupied. In fact, the possibility of condemning the building was discussed by local government officials as far back as 1984.

On 25 March 1998, the Town's Code Enforcement Official, Jack Morgan ("Morgan"), inspected the property pursuant to N.C. Gen. Stat. § 160A-424 to determine its condition. Morgan photographed the building from various angles. However, he did not enter all parts of the building, as some areas were deemed too dangerous to enter. Upon inspection, he found the building to be in a "serious state of decay due to neglect, possible vandalism and exposure to weather conditions." He determined the building to be unsafe pursuant to N.C. Gen. Stat. § 160A-426, and that unsafe structure proceedings should be started as soon as possible. Morgan posted two "Notices of Unsafe Structure" in conspicuous places on the exterior of the building, as required by G.S. § 160A-426. Morgan also asked Alex Corbin, a fellow employee of the Town's Inspection Department, to inspect the building, and Corbin concurred with Morgan's assessment that the building was unsafe.

On 5 April 1998 and 22 April 1998, Morgan returned to the property and re-posted "Notices of Unsafe Structure" to replace his previous notices which had been removed. On 22 April 1998, Morgan mailed a "Notice of Hearing" to plaintiffs pursuant to N.C. Gen. Stat. § 160A-428 informing them of the unsafe condition of the property, certain corrective actions that needed to be taken, and that a public hearing would be held in his office to determine the future of the building on 4 May 1998. Morgan also informed plaintiffs that he would issue an order to either repair, close, vacate, or demolish the building, as determined to be appropriate following the hearing.

At the 4 May 1998 hearing, Lyle Coffey ("Mr. Coffey"), husband of plaintiff Eleanor Coffey, appeared on plaintiffs' behalf, and indicated that he and plaintiffs had not been aware of the condition of the property prior to receiving the "Notice of Hearing," but that they were now aware of the property's unsafe condition and wished to try to make the building safe. Morgan discussed with Mr. Coffey that the building was listed with the Haywood County Tax Office as having no value, and that, in Morgan's opinion, repairing it would be a waste of money. The two men also discussed the Coffey family's past record of not making promised repairs to other dilapidated structures they owned

in the Town, as well as a letter from the Town's police department outlining numerous complaints that had been lodged over the past twenty years regarding the building and its condition. Based on the Coffey family's past indifference to making their properties safe, the length of time 250 Westwood Circle had been in unsafe condition, and the fact that the cost of repairing the building would be substantially greater than its value, Morgan determined that the building should be demolished pursuant to N.C. Gen. Stat. § 160A-429. Plaintiffs were served with notice of this decision by "Finding in Fact and Order" dated 5 May 1998, ordering the demolition of the building and removal of debris from the property by 6 July 1998. The order further informed plaintiffs of their right to appeal the demolition order to the Board within 10 days.

Plaintiffs timely appealed the order to the Board and a hearing was held on 26 May 1998. The minutes of this hearing indicate that some exterior improvements and some minor interior structural repairs had been made to the building since Morgan's last inspection. According to Morgan, the deteriorated stairs had been removed from the back of the building, repair work had been done to a window that had collapsed, some floor joists had been replaced, and the area under the carport had been cleaned out. In response to a question from a member of the Board, Morgan stated that the property was still in no condition to be rented. Plaintiff Eleanor Coffey stated her desire to repair the property so it would no longer be a fire hazard or an eyesore to the area. The Board heard from Jack Smith ("Smith"), who lives across the street from the subject property. Smith stated that the property had been in the same state of deterioration for twenty years and that the Coffey family cared nothing about the condition of their properties located in the Town. The Board voted unanimously to affirm the demolition order, and the date of demolition and removal of debris was moved back to 17 July 1998.

Plaintiffs subsequently filed an appeal with the North Carolina Commissioner of Insurance ("Commissioner") pursuant to N.C. Gen. Stat. § 160A-434. They were informed by the Commissioner that he lacked jurisdiction over the matter.

On 16 June 1998, Morgan visited the property to discuss it with Mr. Coffey. Mr. Coffey showed Morgan some repairs and painting that had been done, and that some of the decayed material had been removed from the property. Morgan again took pictures of the property, was denied entry into the building by Mr. Coffey, and informed

Mr. Coffey he was likely wasting his time in making the improvements. Mr. Coffey informed Morgan that he and plaintiffs still intended to improve the property and were not going to have the building demolished. Morgan returned to inspect the property on 6 July 1998, only to find that the yellow warning ribbon had been removed, debris and combustible material remained, and that the building remained in an unsafe condition in violation of the Board's order.

Plaintiffs filed a notice of appeal, petition for writ of certiorari, complaint for declaratory judgment, complaint for damages, and motion for injunctive relief in Haywood County Superior Court on 30 June 1998. Having received an extension of time to plead, defendant filed an answer, motion to dismiss, and motion to sever on 28 August 1998. On 14 October 1998, Judge Marcus Johnson entered an order severing plaintiffs' "Notice of Appeal [and] Petition for Writ of Certiorari" from plaintiffs' "Complaint for Declaratory [Judgment], Complaint for Damages, [and] Motion for Injunctive Relief." Plaintiffs filed a motion for partial summary judgment on 5 April 1999, which motion was denied by Judge Dennis J. Winner by order dated 10 May 1999. On 7 June 1999, Judge Winner dismissed plaintiffs' notice of appeal but issued a writ of certiorari, and scheduled a hearing for the next available session of Superior Court.

Upon stipulation of the parties in order to prepare a written record for Superior Court, the Board held a second evidentiary hearing on 29 June 1999 to consider plaintiffs' appeal of the demolition order. Following this hearing, the Board entered a new order with extensive findings of fact and conclusions of law affirming the demolition. The written record of this hearing was certified to Superior Court on 27 July 1999. On 31 August 1999, a hearing was conducted by the trial court, which entered an order affirming the Board's decision, concluding defendant: (1) correctly followed the procedures specified in N.C. Gen. Stat. §§ 160A-424 to 160A-431; (2) made no errors of law in its review of the decision of the Code Enforcement Official; (3) protected the due process rights of plaintiffs; (4) based its decisions on competent, material, and substantial evidence; and (5) did not act in an arbitrary and capricious manner. Plaintiffs appeal.

On appeal, plaintiffs assert two bases on which the trial court erred in upholding defendant's demolition order: (1) defendant acted in an arbitrary and capricious manner in not following the procedures

specified in N.C. Gen. Stat. §§ 160A-424 to 160A-429 for condemning unsafe property and ordering its demolition, and (2) defendant acted in an arbitrary and capricious manner in not allowing plaintiffs a reasonable period of time to bring the property into compliance with applicable standards.

[1] We begin by noting that the role of the superior court in reviewing a municipality's decision ordering demolition of a building pursuant to G.S. § 160A-429 is not statutorily mandated, nor has it been defined by the appellate courts of this State. Likewise, the standard to be applied by this Court in reviewing a superior court order in such a case has not been addressed. When determining whether to issue a demolition order pursuant to G.S. § 160A-429, a municipal board which ordinarily sits as a legislative body, such as the Board in the instant case, sits as a quasi-judicial body. Its role is similar to that of a municipal board deciding whether to grant or deny a conditional use permit under N.C. Gen. Stat. § 160A-381(a), *See Sun Suites Holdings, LLC v. Board of Alderman of Town of Garner,* 139 N.C. App. 269, 533 S.E.2d 525, *disc. review denied,* 353 N.C. 280, —— S.E.2d —— (2000) (citations omitted), or a municipal board determining whether a local ordinance has been violated. *See In re Appeal of Willis,* 129 N.C. App. 499, 500 S.E.2d 723 (1998). In these situations, the municipal board sits as a quasi-judicial body to hear evidence, to determine the existence of facts and conditions, and to draw legal conclusions therefrom as a basis of official action. *See Concrete Co. v. Bd. of Comm'rs,* 299 N.C. 620, 625, 265 S.E.2d 379, 382, *rehearing denied,* 300 N.C. 562, 270 S.E.2d 106 (1980). The standard to be applied in reviewing such quasi-judicial decisions of these boards which ordinarily act as legislative bodies is well established. We believe this standard is instructive in determining the standard to be applied in the instant case.

When reviewing the decision of a legislative body acting in its quasi-judicial capacity, the trial court sits as an appellate court, and not as a trier of facts. *Tate Terrace Realty Investors, Inc. v. Currituck County,* 127 N.C. App. 212, 217, 488 S.E.2d 845, 848, *disc. review denied,* 347 N.C. 409, 496 S.E.2d 394 (1997). Thus, the trial court's task includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383. If the petitioner contends the legislative body's decision was based on an error of law, "de novo" review is the proper standard of review. *JWL Invs., Inc. v. Guilford County Bd. of Adjust.*, 133 N.C. App. 426, 429, 515 S.E.2d 715, 717, *disc. review denied*, 351 N.C. 357, 540 S.E.2d 349 (1999). However, if the petitioner contends the legislative body's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the "whole record" test. *Id.* Moreover, "[t]he trial court, when sitting as an appellate court to review [a decision of a quasi-judicial body], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 342 (1999). The role of appellate courts in such cases is to review the trial court's order for errors of law, just as with any other civil case. *Act-Up Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 483 S.E.2d 388 (1997). This process of review by appellate courts has been described as a two-fold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly. *Id.* at 706, 483 S.E.2d at 392.

Based on the similarities between the role of a board of alderman in deciding whether to issue a demolition order under G.S. § 160A-429, and the role of legislative bodies in performing other quasi-judicial functions, we hold that the foregoing standard should apply to our review of the instant case.

[2] In their appeal, plaintiffs make two arguments in support of their contention that the trial court erred in affirming the Board's demolition order. First, plaintiffs argue that defendant was arbitrary and capricious in failing to follow the procedures specified in G.S. §§ 160A-424 to 160A-429 for ordering the demolition of property. Plaintiffs also argue that defendant acted arbitrarily and capriciously in failing to provide plaintiffs with a reasonable period of time to

bring their property into compliance with the law, as required by *Horton v. Gulledge*, 277 N.C. 353, 177 S.E.2d 885 (1970), *overruled on other grounds, State v. Jones*, 305 N.C. 520, 290 S.E.2d 675 (1982). Although plaintiffs use the phrase "arbitrary and capricious" in describing the decision of the Board, their arguments are in fact based on their belief that defendant's decision contained errors of law, in that: (1) defendant did not follow the proper statutory procedure for ordering demolition of property; and (2) defendant failed to provide a reasonable amount of time to repair the property, as required by law.

When a party contends that a legislative body's decision, made while acting in its quasi-judicial capacity, was based on an error of law, "de novo" review is proper. *JWL Invs., Inc.*, 133 N.C. App. at 429, 515 S.E.2d at 717. Plaintiffs do not allege that the trial court exercised the wrong standard in reviewing the Board's demolition order; thus, we proceed to determine whether the trial court exercised "de novo" review properly. *See SBA, Inc., v. City of Asheville*, 141 N.C. App. 19, —— S.E.2d —— (2000) (citations omitted).

N.C. Gen. Stat. §§ 160A-424 to 160A-429 establish a procedure by which cities and towns may condemn buildings found to be unsafe and dangerous, and ultimately order that they be demolished for the protection of the public. Under G.S. § 160A-424, a local inspection department "shall make periodic inspections, subject to the [town] council's directions, for unsafe, unsanitary, or otherwise hazardous and unlawful conditions in structures within its territorial jurisdiction," and "shall make inspections when it has reason to believe that such conditions may exist in a particular structure." N.C. Gen. Stat. § 160A-424 (1999). The inspector is required to notify the owner or occupant of any building in which the inspector finds defects, failures to comply with the law, or other dangerous or fire hazardous conditions. N.C. Gen. Stat. § 160A-425 (1999). In especially dangerous situations, the local inspector is guided by G.S. § 160A-426, which reads:

> **§ 160A-426 Unsafe buildings condemned.** Every building which shall appear to the inspector to be especially dangerous to life because of its liability to fire or because of bad condition of walls, overloaded floors, defective construction, decay, unsafe wiring or heating system, inadequate means of egress, or other causes, *shall* be held to be unsafe, and the inspector *shall* affix a notice of the dangerous character of the structure to a conspicuous place on the exterior wall of said building.

N.C. Gen. Stat. § 160A-426 (1999) (emphases added). Once a building has been condemned as unsafe under G.S. § 160A-426, and the owner has failed to take prompt corrective action, the local inspector is required to send written notice to the owner informing the owner that the building is in dangerous or hazardous condition, that a hearing will be held to determine the future of the building, and that following the hearing an order to either repair, close, vacate, or demolish the building will be entered as deemed appropriate. N.C. Gen. Stat. § 160A-428 (1999). G.S. § 160A-429 further provides:

> If, upon a hearing held pursuant to the notice prescribed in G.S. 160A-428, the inspector shall find that the building or structure is in a condition that constitutes a fire or safety hazard or renders it dangerous to life, health, or other property, he *shall* make an order in writing, directed to the owner of such building or structure, requiring the owner to remedy the defective conditions by repairing, closing, vacating, or *demolishing* the building or structure or taking other necessary steps, within such period, not less than 60 days, as the inspector may prescribe;
>
> . . .

N.C. Gen. Stat. § 160A-429 (1999) (emphases added). Any order entered pursuant to G.S. § 160-429 may be appealed to the town council within 10 days, and must be heard in a reasonable time, with the town council having the power to affirm, modify and affirm, or revoke the order. N.C. Gen. Stat. § 160A-430 (1999).

This Court's review of the record indicates defendant complied with the procedures set forth in G.S. §§ 160A-424 to 160A-429. Morgan, the Town's Code Enforcement Official, conducted an inspection of the property on 25 March 1998 based on reason to believe the property was in dangerous condition. Upon inspection, Morgan found the property to be unsafe and posted notice of the dangerous character of the property pursuant to G.S. § 160A-426. Contrary to plaintiffs' argument on appeal, Morgan's actions on 25 March 1998 complied with the requirements of G.S. § 160A-426, thus, constituting condemnation of plaintiffs' building. After nearly a full month passed and no corrective action was taken, Morgan sent plaintiffs the "Notice of Hearing." Morgan held a hearing and determined the property should be demolished, based on the length of time the property had been in unsafe condition and the unlikelihood that the plaintiffs would actually take sufficient steps to improve the property. This order was appealed to the Board and affirmed after two separate hearings.

Therefore, we find no merit in plaintiffs' argument that defendant failed to properly follow the statutory procedure. Accordingly, this assignment of error is overruled.

**[3]** Plaintiffs also argue defendant failed to provide plaintiffs a reasonable amount of time to repair the property in order to bring it up to standard and avoid demolition, as required by *Horton*. The trial court found that plaintiffs' reliance on *Horton* was misplaced because its facts were distinguishable from the facts in the instant case. We agree with the trial court and likewise overrule this assignment of error.

In *Horton*, the defendant City of Greensboro ("City") had adopted a Housing Code pursuant to N.C. Gen. Stat. §§ 160-182 *et seq.* (currently N.C. Gen. Stat. §§ 160A-441, *et seq.*). The Housing Code provided that if, after notice and hearing, the Inspector of Buildings of the City ("Inspector") determined that a building was unfit for human habitation, he was required to state such determination in writing and issue an order. If the building could be brought up to Housing Code standards by repairs costing less than 60% of the present value of the building, the Inspector was required to order the owner to repair the building, or vacate and close the building as a human habitation. If repairs to bring the building up to Housing Code standards could not be made at a cost of less than 60% of the building's present value, the Inspector was required to order demolition of the building. If the owner failed to comply with an order of demolition, the Housing Commission could direct the Inspector to have the building demolished and impose a lien on the land for the cost of demolition.

Pursuant to the Housing Code, an inspection was made of a dwelling house owned by the plaintiff. After notice and hearing, the Inspector entered an order directing the plaintiff to demolish the building and finding as fact: (1) that the building was unfit for human habitation, and (2) that repair of the building would cost more than 60% of the building's present value. The plaintiff appealed to the defendant's Housing Commission, which thereupon affirmed the decision and order of the Inspector. On certiorari, the decision of the Housing Commission was affirmed by Superior Court.

On appeal, the Supreme Court held that the defendant could not, under the circumstances present, demolish the building without paying compensation to the plaintiff, and impose upon the lot a lien for the cost of the demolition, without giving the owner a reasonable opportunity to bring the building into conformity with the Housing

Code. The Supreme Court reasoned that requiring destruction of the building in such a case, without giving the owner a reasonable opportunity to remove the existing threat to the public health, safety and welfare, was arbitrary and unreasonable. However, the Court specifically did not address the question of the authority of the defendant to destroy the plaintiff's property, without paying compensation therefor, in the event the plaintiff did not, within a reasonable amount of time allowed him by the defendant, repair the house so as to make it comply with the requirements of the Housing Code.

The facts in the case *sub judice* are distinguishable from the facts in *Horton*. In *Horton*, demolition was ordered pursuant to an ordinance which was mandatory in its terms. The Inspector and Housing Commission had no alternative to demolition once the building had been found to be unfit for human habitation and the cost of repair had been found to exceed 60% of the present value of the building. However, in the instant case, the demolition order was entered pursuant to a statutory procedure in which the enforcement official's discretion had not been restricted. Plaintiffs' building was found to be unsafe and was condemned pursuant to G.S. § 160A-426 by posting of two "Notices of Unsafe Structure" on 25 March 1998. At that point, demolition of the building was not required by the statute. Plaintiffs were given an opportunity under the statute to take corrective action to remove the threat to the public health, safety and welfare. Having failed to take any corrective action for 27 days, the plaintiffs received written notice of a hearing to be held to determine the future of the building. This hearing was held on 4 May 1998, forty days after plaintiffs received constructive notice of the unsafe and dangerous condition of the property. Upon finding that the building was in dangerous condition, Morgan (the Town's Code Enforcement Official) was required to issue an order to either repair, close, vacate, or demolish the building. Unlike the Inspector in *Horton*, here Morgan had discretion whether to order demolition of the building. Plaintiffs in the instant case were given forty days—from the posting of notice on 25 March 1998, to the hearing before the Code Enforcement Official on 4 May 1998—to take steps toward repairing the building, in an attempt to influence the decision of the Code Enforcement Official. There is no evidence plaintiffs contacted any contractors, electricians, restoration experts, or other persons for the formulation of plans to restore the building, nor sought the required permits to undertake repairs to the building during this forty-day period. Having failed to take any action for forty days in an attempt to influence the

discretionary decision of the Town's Code Enforcement Official, plaintiffs cannot now claim that they were not given a reasonable amount of time to bring the building up to standard. Thus, we hold that plaintiffs were given a reasonable opportunity to remove the threat to the public health, safety and welfare that was created by their building. Consequently, plaintiffs' final assignment of error is overruled.

In light of the foregoing, we conclude that the trial court properly exercised *de novo* review in upholding the Board of Alderman's demolition order. The trial court's order is affirmed.

Affirmed.

Judges WALKER and HUNTER concur.