RONALD H. SACK, Petitioner-Appellee v. NORTH CAROLINA STATE UNIVERSITY; MARYE ANNE FOX, CHANCELLOR; UNIVERSITY OF NORTH CAROLINA; Respondents-Appellants

No. COA02-39

(Filed 31 December 2002)

**1. Appeal and Error— appealability—interlocutory order— certiorari granted**

A superior court order remanding a university grievance to a university committee was interlocutory, but was treated as a petition for a writ of certiorari and heard in the interests of justice because there was merit in some of the substantive arguments.

SACK v. N.C. STATE UNIV.

[155 N.C. App. 484 (2002)]

**2. Administrative Law— judicial review—standard**

When reviewing a university grievance procedure, the superior court correctly chose to apply de novo review for the evidentiary issues, the proper burden of proof, and the failure to reach an issue, but a challenge to a finding of fact should have been reviewed by the whole record standard. Remand was not necessary, however, because the entire record was before the appellate court.

**3. Administrative Law— university grievance procedures— followed properly**

The superior court erred in an action arising from a university grievance procedure by concluding that the university grievance committee did not perform its official duties properly where the court did not specify the official duties the committee had neglected and no basis for the court's conclusion could be discerned from the issues presented by the petitioner to the trial court.

**4. Constitutional Law— due process—discretionary salary increase—no property right**

A professor who did not receive a raise was not denied due process because he had no property right in the discretionary salary increase.

**5. Administrative Law— university grievance—issue not raised in grievance proceeding—not before superior court**

The superior court erred by reaching the issue of age discrimination when reviewing a university grievance procedure where the issue was never presented at the grievance hearing and thus was not properly before the trial court on appeal.

Appeal by respondents from order entered 1 October 2001 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 9 October 2002.

*Capitol District Law Offices, by Reagan H. Weaver and Robert J. Harris, for petitioner-appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Joyce S. Rutledge, for respondents-appellants.*

SACK v. N.C. STATE UNIV.

[155 N.C. App. 484 (2002)]

BIGGS, Judge.

Respondents (N.C. State University; Marye Anne Fox, Chancellor of N.C. State University; University of North Carolina) appeal from an order vacating their dismissal of petitioner's grievance. For the reasons that follow, we reverse.

This appeal arises from a grievance filed by petitioner challenging a decision not to recommend him for a discretionary salary increase. The evidence in the record tended to show the following: Petitioner was employed by North Carolina State University (the university) as a history professor in 1971, and was tenured in 1974. In 1996, 'academic enhancement' funds were made available to the university for discretionary pay raises to 50% of the history faculty. "The purpose of the academic enhancement funds was to reward highly productive faculty who [were] likely to receive counter offers elsewhere, [and] who could not be easily replaced because of the talents they had." Dean Zahn, the Dean of the College of Humanities and Social Sciences, asked Dr. Riddle, the chair of the history department, to identify the top 50% of the history faculty. Dr. Riddle was directed to consider several objective and subjective factors in making this determination, including: the number and quality of recent publications; service to the university and the community; special talents brought to the department; level of scholarship; likelihood of receiving an offer from another university; and the need to remedy existing salary inequities among history faculty. Dr. Riddle submitted his recommendations to Dean Zahn, who made the final decisions and awarded the discretionary salary enhancements. Petitioner was not among those recommended by Dr. Riddle.

In December, 1996, petitioner filed a grievance against Dr. Riddle, and requested a hearing before the university faculty grievance committee. He alleged that Dr. Riddle had (1) treated him unfairly "for personal reasons" with regards to scheduling of classes and had (2) "deliberately overlooked" him when making his recommendations regarding the discretionary salary enhancements, "again for purely personal reasons." Petitioner was granted a hearing, and on 29 December 1997, the committee submitted its report and recommendation to Chancellor Monteith, then Chancellor of the university. The committee "was unanimous in concluding that [petitioner] was treated fairly" with regard to both the scheduling of classes and the determination of who Dr. Riddle would recommend for a salary enhancement. The committee acknowledged that it had spoken by telephone with Dean Zahn to clarify the time period during which fac-

ulty publications were evaluated. The committee also offered an opinion that "perhaps if Dr. Riddle had been more forthright" with petitioner, "the issue of salary enhancement would have been resolved and would have not resulted in a grievance."

In June, 1998, Chancellor Monteith "accepted the committee's finding on [the] issue" of class schedules. With regards to the issue of salary enhancement, Chancellor Monteith noted that the committee's *ex parte* phone conversation with Dean Zahn violated the university's grievance procedure, which requires that all decisions of the committee "shall be based solely on material presented in the hearings." To correct this error, Chancellor Monteith remanded the grievance "for the limited purpose of receiving Dean Zahn's testimony on the record and providing each party the opportunity to cross-examine." Petitioner then wrote to university administrators asking whether he would be permitted to offer evidence to rebut Dean Zahn's testimony, and was informed that "the committee may entertain a request . . . to present rebuttal to any relevant testimony that Dean Zahn may present regarding the issue of how enhancement monies were allocated."

The committee conducted its remand hearing in December, 1998, and submitted an addendum to its earlier report in May, 1999. The committee again concluded that petitioner "was treated fairly and properly with regard to the manner by which he was evaluated in 1996 for a salary enhancement." The committee also repeated its concerns about "the manner by which Dr. Riddle dealt with [petitioner] concerning this issue."

In July, 1999, Chancellor Fox, who had succeeded Chancellor Monteith, wrote to the committee, petitioner, and Dr. Riddle, stating her intention to accept the committee's recommendation that "no remedial action [was] required" on either of petitioner's grievances. Before finalizing her decision, Chancellor Fox requested that the committee prepare a memo clarifying why it had neither permitted petitioner to present certain rebuttal testimony on the issue of faculty scheduling of classes, nor considered certain documents submitted by petitioner at the remand hearing. Petitioner had proffered documents to show that, although Dr. Riddle testified that he evaluated faculty publications for the previous 2 years, he had recommended certain faculty members for enhancement money whose publication records would not, standing alone, have qualified them unless Dr. Riddle had included their publications for the previous 3 years.

The committee responded that it excluded the testimony regarding rescheduling of classes, because the proposed witness "was not involved in the decision making process . . . [and] was not privy to [petitioner's] interactions with Dr. Riddle" regarding scheduling issues. The committee further explained that it excluded petitioner's proffered documentation as "irrelevant and immaterial" to its resolution of either of the issues it considered dispositive: whether petitioner had shown by a preponderance of the evidence "that Dr. Riddle acted out of deliberate, personal malice," or whether Dr. Riddle's recommendations "evidence[d] unfairness to [petitioner]." The committee made findings of fact that Dr. Riddle was directed to "give very heavy weight" to "the question of whether a given faculty member was both likely to be lured away by another university and was worth retaining." Therefore, the committee determined that Dr. Riddle's review of the number of publications of each faculty member, whether for two or three years, would not necessarily be "the final word on even his initial recommendation to the Dean." The committee also found that the Provost's guidelines "require[d] that Dr. Riddle exercise reasonable judgment" and make a "broader assessment" of an individual faculty members "overall likelihood of being made an offer worth countering." Finally, the committee noted that it had evaluated whether Dr. Riddle's recommendations to Dean Zahn "reflected a reasonable determination of [petitioner's] relative value to his department[,]" and "agreed unanimously and without reservation, that Dr. Riddle's recommendation was indeed reflective of a reasonable determination." On 17 December 1999, Chancellor Fox issued her final decision accepting the committee's conclusions.

Petitioner then appealed to the President of the University of North Carolina. He reiterated his original complaints, and added new allegations of age discrimination, breach of contract, and violation of his due process rights. President Broad found no evidence that "the process or decisions reached in [petitioner's] appeal were wrongly made or otherwise in error" and, accordingly, found "no basis for reversing or otherwise modifying" Chancellor Fox's decision. President Broad declined to address petitioner's age discrimination and breach of contract allegations, as these were not raised before the committee. Thereafter, petitioner appealed to the UNC Board of Governors, who referred the matter to their Committee on University Grievance. That committee found "no compelling basis . . . for disturbing the president's decision" and recommended that the board sustain the president's decision and dismiss petitioner's appeal.

The Board of Governors approved the recommendation on 10 November 2000.

From the decision of the Board of Governors, petitioner on 15 December 2000 appealed to the superior court for review. Petitioner's appeal was heard in superior court on 7 June 2001. On 1 October 2001, the trial court issued an order vacating the Board of Governors decision upholding Chancellor Fox's dismissal of petitioner's grievance. The court remanded petitioner's grievance "to the Grievance Committee" with instructions directing the committee to list all history faculty publications between specific starting and ending dates, and to assign "points" for publications of various types, according to the system that Dr. Riddle testified he used. The committee was ordered to prepare "a master list of all the faculty members . . . in rank order" and "determine the position occupied by the Petitioner" according to the "point" system for the quantity of publications during the specified time period. If petitioner was in the top half of this list, the court ordered that "[petitioner's] name and position in the ranking will be submitted to the Chancellor with a recommendation that he was not treated fairly." Conversely, if petitioner was not in the top 50%, the court ordered that "[petitioner's] grievance will be recommended for dismissal[.]" The court also ordered that "the Grievance Committee shall not consider the age of any faculty member, or any other factor" besides the publications each faculty member had during the specified time period, and directed the committee to take testimony and rebuttal evidence on the issue of whether respondent had any "legitimate business reason" for considering the age of faculty members. Finally, the trial court ordered that "[t]he Chancellor shall accept the recommendations of the Grievance Committee . . . and shall issue her determination of Petitioner's grievance." From this order, respondents appeal.

Preliminarily, we address petitioner's appellate motions to dismiss respondents' appeal, and to strike portions of respondents' reply brief. In his motion to dismiss, petitioner argues that, because the trial court remanded to the committee rather than reversing the Board of Governors, respondents' appeal should be dismissed as interlocutory. Petitioner correctly asserts that the trial court's order was interlocutory. See *Heritage Pointe Bldrs. v. N. C. Licensing Bd. of General Contractors*, 120 N.C. App. 502, 504, 462 S.E.2d 696, 697-98 (1995), *disc. review denied* , 342 N.C. 655, 467 S.E.2d 712 (1996) (where trial court "vacated the Board's decision and remanded

SACK v. N.C. STATE UNIV.

[155 N.C. App. 484 (2002)]

the case for a rehearing, consistent with its order . . . the order requires further action to settle the controversy, [and] it is interlocutory"). This Court has generally held that an order "remanding an action to an agency for hearing . . . is not immediately appealable because avoidance of a hearing does not affect a substantial right." *Byers v. N. C. Savings Institutions Division*, 123 N.C. App. 689, 693, 474 S.E.2d 404, 407 (1996). However, in the case *sub judice*, we find merit in certain of respondents' substantive arguments. Therefore, in the interests of justice and pursuant to our authority under N.C.R. App. P. 21, we elect to treat respondents' appeal as a petition for writ of *certiorari. See* N.C. R. App. P. 21 (2001)(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review . . . when no right of appeal from an interlocutory order exists[.]"). *See also Tastee Freez Cafeteria v. Watson*, 64 N.C. App. 562, 564, 307 S.E.2d 800, 802 (1983) (granting immediate review where trial court "exceeded its scope of review by [remanding for] further findings without first determining whether the [agency's] findings were sufficient to support [its] conclusion").

Petitioner also filed a motion to strike portions of respondents' reply brief. We conclude that respondents' reply brief comports with the requirements of N.C.R. App. P. 28(h), and, accordingly, deny petitioner's motion.

## Standard of Review

[1] The trial court's order was entered pursuant to petitioner's appeal from a final agency decision, in this case the decision by the Board of Governors denying further review of his grievance against Dr. Riddle. Judicial review of a final agency decision is governed by N.C.G.S. § 150B-51(b) (2001):

[I]n reviewing a final decision, the court may affirm the decision of the agency or remand the case . . . for further proceedings. It may also reverse or modify the agency's decision . . . [if] substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious, or an abuse of discretion.

The standard of review applied by the superior court reviewing a final agency decision is determined by the type of error asserted; errors of law are reviewed *de novo*, while the whole record test is applied to allegations that the administrative agency decision was not supported by the evidence, or was arbitrary and capricious. *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 443 S.E.2d 114 (1994). "De novo review requires a court to consider the question anew, as if the agency has not addressed it." *Blalock v. N.C. Dep't of Health and Human Servs.*, 143 N.C. App. 470, 475-76, 546 S.E.2d 177, 182 (2001).

When it applies the whole record test, "the reviewing court [must] examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citation omitted). Substantial evidence is " 'more than a scintilla' and is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Williams v. N.C. Dep't of Env't & Natural Res.*, 144 N.C. App. 479, 483, 548 S.E.2d 793, 796 (2001) (quoting *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982)). The whole record test "does not permit the court 'to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it de novo,' " *N.C. Dept. of Correction v. McNeely*, 135 N.C. App. 587, 592, 521 S.E.2d 730, 733 (1999) (quoting *Thompson v. Wake County Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977)), but "merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Dept. of Correction v. Gibson*, 58 N.C. App. 241, 257, 293 S.E.2d 664, 674 (1982), *rev'd on other grounds*, 308 N.C. 131, 301 S.E.2d 78 (1983). Thus, if the agency's findings are supported by substantial evidence, they must be upheld. *Id.*

On appeal, this Court must determine whether the trial court committed any error of law, and our review of the trial court's order generally involves "(1) determining whether the trial court exercised

the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118-19. Thus, in its order regarding an agency decision, the trial court should state the standard of review it applied to resolve each issue. *Deep River Citizens' Coalition v. North Carolina Dept. of Environment and Natural Resources*, 149 N.C. App. 211, 215, 560 S.E.2d 814, 817 (2002) (citation omitted). However, if necessary, "this Court's duty to review a superior court order for errors of law can be accomplished by addressing the dispositive issue(s) before the [agency] and the superior court without (1) examining the scope of review utilized by the superior court [or] (2) remanding the case if the standard of review employed by the superior court cannot be ascertained," provided that this Court can "determine whether: (1) the [b]oard committed any errors in law; (2) the [b]oard followed lawful procedure; (3) the petitioner was afforded appropriate due process; (4) the [b]oard's decision was supported by competent evidence in the whole record; and (5) . . . the [b]oard's decision was arbitrary and capricious." *Capital Outdoor, Inc. v. Guilford County Bd. of Adjustment* (I), —— N.C. App. ——, 567 S.E.2d 440 (2002) (quoting *Capital Outdoor, Inc. v. Guilford County Bd. of Adjustment* (II), 146 N.C. App. 388, 390, 392, 552 S.E.2d 265, 267 (2001), (Greene, J., dissenting), *rev'd per dissent*, 355 N.C. 269, 559 S.E.2d 547 (2002)).

In the case *sub judice*, petitioner, in his appeal to superior court, argued that the committee erred by (1) excluding testimony by petitioner's rebuttal witness on the issue of Dr. Riddle's scheduling of classes; (2) excluding petitioner's proffered documentary rebuttal evidence on the issue of whether Dr. Riddle had recommended certain faculty members whose publications during the previous two years would not have been enough to place them in the top 50%; (3) requiring petitioner to show by the preponderance of the evidence that Dr. Riddle had acted out of personal malice; (4) failing to "note the use of an impermissible criterion that influenced Riddles's selection process; to wit, age bias"; and, (5) finding that petitioner had been treated fairly by Dr. Riddle with regards to his recommendations to Dean Zahn regarding salary enhancement. Petitioner also added a generalized allegation that his "substantial rights" were violated because respondent's actions were "in violation of constitutional provisions, made upon unlawful procedure, affected by other error of law, unsupported by substantial evidence . . . in view of the entire record as submitted, and arbitrary or capricious." However, petitioner did not associate this broad statement with any specific finding or decision by respondent.

**[2]** In its order, the trial court concluded that "a *de novo* review is appropriate for its consideration of each of Petitioner's assignments of error, because the [c]ourt views each of Petitioner's assignments of error as alleging errors of law." This conclusion was correct as regards the evidentiary issues, the proper burden of proof, and the committee's failure to reach the issue of age bias. However, petitioner's challenge to the committee's finding of fact, that Dr. Riddle had treated petitioner fairly in making his recommendations to Dean Zahn, requires application of the whole record standard.

Although the trial court erred by failing to conduct whole record review of this issue, "[w]e do not believe a remand is necessary, however, because the central issue presented . . . is whether there was competent, material, and substantial evidence to support [the committee's] decision. . . . and the entire record of the hearing is before us." *Mann Media, Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 15, 565 S.E.2d 9, 18 (2002) (reviewing issue despite trial court's failure to properly delineate the standard of review it employed).

I.

**[3]** Respondents argue that the trial court erred by "ignoring and misinterpreting" "agency regulations bearing on the faculty grievance proceedings." We agree.

We first review the relevant agency regulations. Under N.C.G.S. § 116-11(2) (2001) the UNC Board of Governors is "responsible for the general . . . control, supervision, management and governance of . . . the constituent institutions[, and f]or this purpose . . . may adopt such policies and regulations as it may deem wise." Accordingly, the Board of Governors has directed that the Chancellor of each constituent institution "shall provide for the establishment of a faculty grievance committee" (Board of Governors Code § 607) and has authorized the various Boards of Trustees to "adopt personnel policies not otherwise prescribed by state law[.]" (Board of Governors Code, Appendix 1). NCSU regulations governing its grievance procedures are found in its Faculty Handbook, § 24.01, Grievance Procedure for Faculty, and in its NCSU Grievance Committee Manual. Under the university's grievance procedures, the trial court's review of the Board of Governors' decision not to hear petitioner's appeal was the fourth level of appeal by petitioner from Dr. Riddle's determination that petitioner should not be recommended for a discretionary pay raise. The earlier stages of the university's grievance process are summarized below:

1. The grievance committee conducts a hearing to determine whether the petitioner has shown by a preponderance of the evidence that "a decision which has adversely affected a [grievant's] professional or academic capacity, has been reached improperly or unfairly." The committee "has no power to reverse an administrative decision but can only recommend a reassessment of that decision[.]"

2. Based upon a review of the complete record of the committee, the Chancellor makes the decision whether to accept the committee's recommendation.

3. The President of UNC reviews the Chancellor's decision to determine whether "the process in reaching [the] decision[] was correctly followed and that the final conclusion reached had an evidentiary basis in the record."

4. The Board of Governors examines the record to determine if significant procedural or substantive errors below require review.

NCSU Grievance Manual, III.A.; NCSU Grievance Procedure, 24.01.10 and 13; Board of Governors, "Appellate Review Policies and Procedures." Before conducting a hearing, the grievance committee must ascertain whether the alleged grievance meets its jurisdictional requirements. The committee may conduct a hearing only if the petitioner asserts that an administrative decision was reached improperly or unfairly, as those terms are defined by the university:

Improperly means in violation of a specific university rule, regulation, policy, or practice pertaining to the employment relationship between the grievant and the university. Unfairly means in an arbitrary or capricious manner or in an unlawfully discriminatory manner.

NCSU Grievance Procedure, 24.01.2.1. Moreover, the grievance procedure "cannot be used for . . . discretionary actions, such as salary adjustments . . . except to determine (1) whether the discretionary action was made in accordance with relevant university rules, regulations, policies, practices, procedures, or criteria; and (2) whether the action constitutes a clear abuse of discretion." NCSU Grievance Procedure, 2401.2.2.b. Thus, "if the grievance contains allegations that are not grievable, those allegations must be dismissed." NCSU Grievance Manual, IV.A.2.a. Further, the "grievant bears the burden of establishing the jurisdictional grounds . . . and the burden of proving

by a preponderance of the evidence [the] grounds for the grievance." NCSU Grievance Manual, III.A; IV.I.2.

In the case *sub judice*, petitioner alleges neither a violation of "a specific university rule, regulation, policy, or practice," nor that he was the victim of discrimination. Rather, his grievance alleged that Dr. Riddle's decisions regarding scheduling of petitioner's classes for Spring, 1996, and his recommendations to Dean Zahn for salary enhancement both were unfairly based on "purely personal reasons." Petitioner's allegations, if proven, could constitute "a clear abuse of discretion" and, thus, the committee properly granted petitioner a hearing.

In its order the trial court concluded that the committee "did not properly perform its official duties." The court did not specify which "official duty" the committee had neglected. We have, therefore, reviewed each of the issues raised by petitioner in his appeal to superior court, to determine whether the resolution of these issues provides support for the trial court's conclusion.

In his appeal to superior court, petitioner excepted to the committee's findings that he was "treated fairly with regard to the salary enhancement issue." We disagree with petitioner.

The committee is the only fact-finding body in the grievance procedure; it is charged with "resolving conflicting testimony," and must "evaluate the evidence and determine the truth of material evidence." NCSU Grievance Manual, IV.D.2. In the case before us, the committee's report to the Chancellor stated that the committee "was unanimous in concluding that [petitioner] was treated fairly." After remanding to take Dean Zahn's testimony on the record, the committee prepared an addendum to their report, stating that "[o]nce again, the [c]ommittee concludes that [petitioner] was treated fairly and properly with regard to the manner by which he was evaluated in 1996 for a salary enhancement." Finally, in its memorandum to Chancellor Fox clarifying certain evidentiary rulings, the committee "agreed unanimously and without reservation, that Dr. Riddle's recommendation was indeed reflective of a reasonable determination." We conclude that the committee's findings of fact in this regard were supported by substantial evidence in view of the whole record.

At the hearing, Dr. Riddle testified that he had not based his recommendations to Dean Zahn on personal animus, and had weighed many factors. The testimony of other university professors and

administrators tended to show that Dr. Riddle was directed to employ multiple criteria in his determinations, and that he was generally fair in making administrative decisions. Petitioner's testimony indicated that Dr. Riddle's recommendations were to be based on the number of publications for the previous three years, and that if factors other than the number of publications were excluded, he might have been in the top 50%. The committee was thus required to resolve conflicting testimony. "An appellate court may not . . . disturb an agency's assessment of the credibility of the witnesses and the weight and sufficiency to be given to the testimony, . . . and may not override decisions within the agency's discretion if made in good faith and in accordance with the law." *Teague v. Western Carolina University*, 108 N.C. App. 689, 692, 424 S.E.2d 684, 686, *disc. review denied*, 333 N.C. 466, 427 S.E.2d 627 (1993) (citing *Jarrett v. N.C. Dep't of Cultural Resources*, 101 N.C. App. 475, 479, 400 S.E.2d 66, 68 (1991)). Further, the university has expressly admonished the committee to "understand the limits of their role. A Committee does not replace management[,] . . . [and] may not support a grievance where reasonable persons could have differed and improper factors and improper procedures were not involved." We conclude that the committee's finding that petitioner had been treated fairly was supported by substantial competent evidence, and must be upheld.

Petitioner also argued on appeal to superior court that the committee erred by requiring him to prove deliberate personal malice. Two issues are presented: the appropriate burden of proof, and the committee's use of the term "deliberate personal malice." Regarding the burden of proof, university regulations are clear that petitioner had the burden of proving his allegations by a preponderance of the evidence. NCSU Grievance Manual, III.A; IV.I.2. In the instant case, therefore, petitioner had the burden to prove his allegations that Dr. Riddle had "unfairly treated" him with regards to scheduling; that "this unfair treatment was deliberate"; and that Dr. Riddle "deliberately overlooked [him] when recommending faculty for [salary] increases, again for purely personal reasons." Regarding the committee's use of the term "personal malice," we note that the Code of the Board of Governors, applicable to its constituent institutions, *see* N.C.G.S. § 116-11(2) and (14), and N.C.G.S. § 116-34, defines "personal malice" as "dislike, animosity, [or] ill-will . . . based on personal characteristics, [or] traits . . . of an individual that are not relevant to valid University decision-making." Board of Governors, "Appellate Review" III-I-15. Petitioner's assertions that Dr. Riddle, *e.g.*, "deliberately over-

looked [him] when recommending faculty for increases, again for purely personal reasons" would appear to fall within the Board of Governors definition of "personal malice," as the term is used in university proceedings. Moreover, although the committee used the term "personal malice" in a memorandum clarifying one of its evidentiary rulings, the committee's written submissions to university administrators all stated affirmatively that Dr. Riddle's recommendation was reflective of a reasonable determination, and that petitioner was treated fairly. We hold that the committee did not err by requiring petitioner to prove his allegations by the preponderance of the evidence, and that petitioner was not subjected to a heightened standard by the committee's reference to petitioner's specific allegations, that Dr. Riddle's scheduling and salary enhancement decisions were based on "purely personal reasons," by the more general term "personal malice."

Petitioner's appeal to superior court also challenged two of the committee's evidentiary rulings. We first note that the committee is authorized to "exercise complete control" over the hearing, including the determination of "whether information or testimony is material and relevant to the issues involved in the grievance." It "may rule that certain presentations not be considered[,]" and in so doing, the committee is "not bound by strict rules of legal evidence" although its rulings must be "[c]onsistent with the principles of impartiality and equity[.]" NCSU Grievance Procedures, § 24.01.8.

In the present case, the committee excluded certain testimony regarding scheduling of classes, on the basis that the witness "was not involved in the decision making process . . . [and] was not privy to [petitioner's] interactions with Dr. Riddle" regarding scheduling issues. We conclude that this determination was within the scope of the committee's authority, and was not error.

The committee also excluded documents offered by petitioner in rebuttal to Dean Zahn's testimony. These documents were intended to show that Dr. Riddle had recommended certain faculty to Dean Zahn despite the fact that the number of publications by these faculty in the past two years would not, standing alone, have placed them in the top 50%. In excluding this evidence, the committee rejected petitioner's basic premise—that Dr. Riddle's recommendations for salary increases were supposed to be based primarily upon how many publications each faculty member had within a certain time period, so that evidence that in several cases Dr. Riddle's recommendations did

not correspond to the faculty member's rank according to number of publications would tend to show unfairness on Dr. Riddle's part. Instead, the committee, as fact-finder, determined that Dr. Riddle was directed to base his recommendations largely on a subjective assessment of many factors, in order to determine whether a faculty member was likely to receive an competitive offer from another institution, and on Dr. Riddle's evaluation of the faculty member's "relative value to his department." The committee concluded that, even assuming Dr. Riddle made an "inadvertent error" in his tabulation of the number of publications for the two or three previous years, this "would not, without more evidence, have established deliberate personal malice." The committee found that there was no other evidence that Dr. Riddle acted for personal reasons, and that "Dr. Riddle's recommendation reflected a reasonable determination of [petitioner's] relative value to his department." The committee therefore excluded petitioner's proffered "rebuttal evidence" on the basis that it was "irrelevant and unnecessary" to their determination of whether Dr. Riddle's failure to recommend petitioner for a raise was "deliberately" based upon "purely personal reasons" as alleged by petitioner. We hold that the committee's decision not to consider petitioner's rebuttal evidence was within its authority, and was not inconsistent with the "principles of impartiality and equity" that the university requires the committee to apply.

For the reasons discussed above, we are unable to discern any basis in the issues presented by petitioner to the trial court, for the trial court's conclusion that the committee "did not properly perform its official duties." Accordingly, respondents' assignment of error that the trial court erred in interpreting relevant agency regulations is upheld.

II.

[4] Respondents also argue that the trial court erred by concluding that petitioner was denied due process because petitioner's grievance "implicates no interest protected by due process rights." Specifically, respondents contend that the discretionary salary enhancement did not give rise to any property right of petitioner's invoking his right to due process. We agree.

"In analyzing a due process claim, we [must] first . . . determine whether a constitutionally protected property interest exists. To demonstrate a property interest under the Fourteenth Amendment, a party must show more than a mere expectation; he must have a legit-

imate claim of entitlement." *McDonald's Corp. v. Dwyer*, 338 N.C. 445, 447, 450 S.E.2d 888, 890 (1994) (citing *Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed.2d 548 (1972)). A 'legitimate claim of entitlement' requires "more than a 'unilateral expectation' of a property interest[.]" *Chapman v. Byrd*, 124 N.C. App. 13, 18, 475 S.E.2d 734, 738 (1996), *disc. review denied*, 345 N.C. 751, 485 S.E.2d 50 (1997) (quoting *Roth*, 408 U.S. 564, 577, 33 L. Ed.2d 548, 561 (1972)).

Although North Carolina appellate courts have not addressed this issue in the context of a discretionary salary increase, appellate cases from other jurisdictions have held there is no property interest in discretionary decisions about employment. *See, e.g., Leventhal v. Knapek*, 266 F. 3d 64, 67 (2nd Cir. (N.Y.) 2001) ("discretionary salary increase was not a form of property protected by the Constitution against deprivation without due process of law"); *Temple v. Inhabitants of City of Belfast*, 30 F. Supp.2d 60, 67 FN5 (D. Me. 1998) (no property interest in raise absent evidence of entitlement, *e.g.*, "facts indicating that such raises were provided for by statute, regulation, rule, or contractual provision"); *Day v. Board of Regents of University of Nebraska*, 911 F. Supp. 1228, 1241 (D. Neb. 1995), *aff'd*, 83 F.3d 1040 (8th Cir. (Neb.) 1996) (no property interest in salary raise where plaintiff "claims that he has not received salary increases which he believes his academic record merits, [but] he has offered no evidence of any statute, regulation, rule, or contractual provision [that] would entitle him to receive any raise, let alone one of a specific amount").

In the case *sub judice*, petitioner does not cite any statute or university regulation that would entitle him to be recommended for the salary enhancement. Moreover, as discussed above, the committee found that Dr. Riddle was directed to base his recommendations on an array of factors, both objective and subjective. These findings of fact establish that an individual faculty member could have no more than a unilateral expectation that he or she would be recommended by Dr. Riddle. We hold that petitioner's Due Process rights were not implicated in Dr. Riddle's recommendations to Dean Zahn, and that the trial court erred by concluding that petitioner had a contractual right to be recommended for a raise, or that his Due Process rights were violated.

### III.

**[5]** Finally, respondents argue that the trial court erred in reaching the issue of age discrimination. Again, we agree.

The trial court concluded that "the Board of Trustees, the Dean, and Dr. Riddle were all influenced illegally by age bias[,]" and that the committee "ignored substantial evidence of age discrimination." University regulations strictly limit a grievance committee to consideration of issues alleged in petitioner's grievance letter, or which the committee has unanimously consented to consider by later amendment of the grievance. NCSU Grievance Procedure, 3.1.1; 8.1.11.

In the instant case, it is undisputed that petitioner did not raise the issue of age discrimination in his request for a grievance hearing, did not request an amendment of his grievance, and did not even raise the issue at the hearing. Therefore, this issue was never presented at petitioner's grievance hearing, and thus was not properly before the trial court on appeal. *See Tate Terrace Realty Investors, Inc. v. Currituck County*, 127 N.C. App. 212, 224, 488 S.E.2d 845, 852, *disc. review denied*, 347 N.C. 409, 496 S.E.2d 394 (1997) ("superior court in its posture of an appellate court, . . . may not consider a matter not addressed by the [agency]") (citation omitted). Therefore, the trial court erred by addressing the issue on appeal.

For the reasons discussed above, we conclude that the trial court's order, reversing respondents' decision dismissing petitioner's grievance, was erroneous and must be

Reversed.

Judges WALKER and THOMAS concur.