In re Judicial Review of Final Agency Decision of the N.C. Bd. of CPA Exam'rs, 2017 NCBC 39.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 12212

IN RE:

JUDICIAL REVIEW OF FINAL
AGENCY DECISION OF THE NC
BOARD OF CPA EXAMINERS IN
THE MATTERS OF BELINDA L.
JOHNSON, CPA #31871; AND,
BELINDA JOHNSON CPA, P.A.,
DATED JUNE 23, 2016 (N.C.G.S §
150B-43, et seq.)

OPINION AND ORDER ON PETITION
FOR JUDICIAL REVIEW

THIS MATTER comes before the Court on a Petition for Judicial Review of a Final Agency Decision of the North Carolina Board of Certified Public Accountant Examiners pursuant to N.C. Gen. Stat. §§ 150B-43 ("Petition").

THE COURT, having considered the Petition, the Response to the Petition, the briefs in support of and in opposition to the Petition, the record evidence, the arguments of counsel made at the hearing, and other appropriate matters of record, FINDS and CONCLUDES that the Petition should be DENIED for the reasons set forth below.

> *Carlton Law Group by Alfred P. Carlton, Jr., Esq. and Cara Artuso Dempster for Petitioners Belinda Johnson CPA and Belinda Johnson CPA, P.A.*

> *Allen & Pinnix, P.A. by Noel L. Allen, Esq., Nathan E. Standley, Esq. and North Carolina State Board of Certified Public Accountant Examiners by Frank X. Trainor, Esq. for Respondent North Carolina State Board of Certified Public Accountant Examiners.*

McGuire, Judge.

## A. INTRODUCTION.

This matter involves a dispute between Petitioners Belinda Johnson, CPA ("Johnson") and Belinda Johnson, CPA, P.A. ("the Firm") (collectively, "Petitioners") and Respondent North Carolina State Board of Certified Public Accountant Examiners ("the Board"). Petitioners seek judicial review of the final decision of the Board entered June 23, 2016 ("Board Order"). In the Board Order, the Board found that Johnson (a) failed to comply with Government Auditing Standards ("GAS") and generally accepted auditing standards and failed to cause the Firm to comply with these standards, (b) failed to fulfill the terms of a peer review contract, and (c) failed to timely respond to the Board's staff during its investigation. The Board concluded that Johnson's conduct violated rules and standards for certified public accountants promulgated by the Board. The Board imposed monetary sanctions against Johnson, suspended the Firm's registration for three years, and revoked Johnson's certificate for five years, but stayed the revocation conditional upon Johnson's compliance with North Carolina accountancy laws and rules during the five year stay. Petitioners purport to challenge the Board's Order on several procedural and evidentiary bases. Accordingly, the Court must undertake a review of the Board Order pursuant to the standards in N.C. Gen. Stat. § 150B-51 (hereinafter, references to the General Statutes will be to "G.S.").

## B. PROCEDURAL AND FACTUAL BACKGROUND.

1. Johnson is a North Carolina certified public accountant ("CPA"), and is the sole owner of the Firm, a North Carolina certified public accounting corporation.

2. The Board is an administrative agency created by the North Carolina General Assembly. G.S. § 93-12. The Board is authorized, *inter alia*, "to adopt rules of professional ethics and conduct to be observed by certified public accountants in this State and persons exercising the practice privilege authorized by this Chapter." G.S. § 93-12(9). The Board also is authorized to take certain disciplinary actions against CPAs, including "to revoke, either permanently or for a specified period, any certificate issued . . . to a [CPA] or any practice privilege authorized by the provisions of this Chapter" and to assess civil penalties of up to one thousand dollars ($1,000.00) for "[v]iolation of any rule of professional ethics and professional conduct adopted by the Board." *Id.*

3. The Board also is authorized to "promulgate rules and regulations for the administration of the report review and peer review requirements. . ." G.S. § 93-12(8c). The Board has adopted rules that require CPAs and certified public accounting firms ("CPA firm(s)") that perform audits or reviews of financial statements to undergo a peer review every three years. 21 N.C. Admin. Code 08M.0105 (hereinafter, references to the North Carolina Administrative Code will be to "NCAC"). The rules provide that a peer review may be completed through the American Institute of CPAs ("AICPA") Peer Review Program or any equivalent program. 21 NCAC 08M.0105(d). In North Carolina, the AICPA Peer Review Program is administered by the North Carolina Association of Certified Public Accountants ("NCACPA"). The NCACPA maintains a list of approved peer reviewers who have met the requirements established by the AICPA for conducting peer reviews.

4. The CPA firm undergoing a peer review must choose an approved reviewer from the NCACPA's approved list. The CPA firm and the peer reviewer then enter into a peer review engagement contract. Under the Board's rules, it is a discreditable act to fail "to fulfill the terms of a peer review engagement contract." 21 NCAC 08N.0203(b)(4).

5. The Board's rules do not require a CPA firm to pass the peer review. The CPA firm is merely required to provide the Board with notice that it has completed the peer review process. The Board does not discipline CPAs or CPA firms for failing a peer review, but opens a disciplinary investigation case because the failed review could be based on an underlying violation of audit or accounting standards.

6. In May 2013, Petitioners engaged Tina Purvis of Hollingsworth Avent Averre & Purvis, PA ("Purvis") to perform a peer review of the Firm's accounting and auditing practice. Petitioners and Purvis entered into an "Engagement for System Peer Review" (hereinafter, "Peer Review Contract"). (Official Record 22–24; hereinafter, references to the Official Record will be to "OR"). The Peer Review Contract provided the terms under which Purvis would conduct the peer review, and that Purvis would bill Petitioners at an hourly rate of $150. The Peer Review Contract contained an estimate that the peer review would take 15 to 21 hours of work by Purvis to complete. (OR 23.) The Peer Review Contract did not contain a specific amount that would be charged.

7. Purvis performed the peer review, and on July 29, 2013, issued a "System Review Report." (OR 25–26.) The System Review Report noted three specific

areas of deficiencies that did not comply with professional standards for conducting audits, including GAS. Purvis stated that "the system of quality control for the accounting and auditing practice of Belinda Johnson, CPA, P.A. in effect for the year ended March 31, 2013, was not suitably designed and complied with to provide the firm with reasonable assurance of performing and/or reporting in conformity with applicable professional standards in all material respects. [The Firm] has received a peer review rating of *fail*." (OR 26.)

8.      Petitioners disputed the results of the peer review to the North Carolina Association of Certified Public Accountants Peer Review Committee ("Peer Review Committee"). A panel of the Peer Review Committee met with Johnson and Purvis via teleconference to consider the dispute between Petitioners and Purvis. (OR 56.) Following the telephone conference, the panel accepted the failed peer review issued by Purvis.

9.      On April 30, 2014, Purvis filed a complaint with the Board alleging that Petitioners failed to fulfill the terms of the Peer Review Contract by refusing to pay for the peer review. Johnson filed a complaint with the Board alleging that Purvis was not qualified to perform peer audits.

10.     On August 14, 2014, the Board sent Petitioners a letter notifying them that the "the Board has opened a new matter against your firm . . . based on the failed peer review that has been reported to the Board," and that the new case was being submitted to the Board's Professional Standards Committee ("Standards Committee") for review with the other outstanding complaints. (OR 37–38.)

11. On September 23, 2014, the Board emailed to Johnson a letter from the Standards Committee. (OR 27–29.) The email stated that "[t]he Board has dismissed the complaint against Ms. Purvis as the evidence documented that Ms. Purvis was determined qualified to perform the peer review services provided to [the Firm,]" but that Purvis's complaint against Johnson "has been held open." (OR 27.) The letter stated that Johnson had not complied with the Peer Review Contract because Johnson had not paid Purvis and directed Johnson to "resolve this matter with Ms. Purvis on or before October 23, 2014." (OR 29.) The letter also informed Johnson that "After you and Ms. Purvis have come to an agreement, the Committee will reconsider this case after that date to "determine if the Board has any disciplinary interest." (OR 29.)

12. Johnson did not resolve the dispute with Purvis. On August 28, 2015 the Standards Committee sent a letter to Johnson requesting that she submit documents related to Purvis' peer review. (OR 101–03.) The letter also stated that the Standards Committee had discovered what appeared to be a tax lien filed against the Firm, and requested that Johnson provide documents and information regarding the tax lien. (OR 101–03.) On September 4, 2015, Johnson sent a letter to the Standards Committee stating that she considered the requested documents and information "unnecessary and redundant" and "irrelevant and immaterial to this case," and that the request for information was "declined." (OR 104.)

13. The Board noticed this matter for a hearing regarding alleged violations of the standards and rules applicable to CPAs including, *inter alia*: (1) Johnson's

failure to comply with GAS and GAAS; (2) Petitioner's failure to fulfill the terms of the peer review engagement contract; and (3) failure to timely respond to the Board staff's inquiries.

14. On May 19, 2016, the Board held a hearing. Johnson was not represented by counsel at the hearing, but Johnson attended the hearing, introduced testimony and documents into evidence, and cross-examined the Board's witnesses.

15. On June 23, 2016, the Board issued the Board Order. (OR 984–86.) The Board Order: assessed Johnson a $1,000 civil penalty for "failure to comply with [GAS] and generally accepted accounting standards in violation of 21 NCAC 08N.0409, 0403, and .0212, and for failing to cause [the] Firm to comply with those same regulations"; assessed Johnson a $1,000 civil penalty for "failure to cooperate with the Board in violation of 21 NCAC 08N.0206"; suspended the Firm's registration for three years, or until Johnson proved that she was in compliance with the peer review recommendations; and revoked Johnson's CPA license for five years, but stayed the revocation on the condition Johnson comply with North Carolina accountancy laws and rules during the stay. (OR 986.)

16. On July 22, 2016, Petitioners filed the Petition. On July 25, 2016, this case was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to G.S. § 7A-45.4(b), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases by Order of Chief Judge James L. Gale.

17. On August 22, 2016, the Board filed its Response to the Petition. The parties briefed their positions regarding the Petition. On February 21, 2017, the Court held a hearing on the Petition and it is now ripe for disposition.

## C. ANALYSIS.

### Standard of Review

18. Review of a final decision of an administrative agency is governed by G.S. § 150B-51, which provides in relevant part as follows:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
> (3) Made upon unlawful procedure;
> (4) Affected by other error of law;
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
> (6) Arbitrary, capricious, or an abuse of discretion.
>
> (c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

G.S. §150B-51(b)–(c).

19. The de novo standard permits the reviewing court "to consider the matter anew and to freely substitute its own judgment in place of the agency's." *Trotter v. N.C. Dep't of Health & Human Servs.*, 189 N.C. App. 655, 660, 659 S.E.2d 749, 752 (2008).

20. An agency's findings of fact are reviewed under the whole record standard. *Trotter*, 189 N.C. App. at 659, 659 S.E.2d at 752. When applying the whole record test, "the reviewing court must examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.'" *Sack v. N.C. State Univ.*, 155 N.C. App. 484, 491, 574 S.E.2d 120, 126 (2002) (citation omitted). "The whole record test does not permit the court to replace the agency's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it de novo, but merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Id.* at 492, 574 S.E.2d at 127 (citations omitted). "A proper application of the whole record test takes into account the expertise of an administrative agency." *Charter Pines Hosp. v. N.C. Dep't of Human Res.*, 83 N.C. App. 161, 171, 349 S.E.2d 639, 646 (1986). Therefore, the Court should defer to the Board's "unchallenged superiority" to make findings of fact. *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 662, 599 S.E.2d 888, 896 (2004).

21. Here, the Court's task of reviewing the Board's Order is made exceedingly difficult by the Petitioner's failure to support their exceptions with

references to the record evidence, or with coherent arguments or citation to legal authority. Petitioner's brief consists primarily of declaratory statements that, for the most part, are not linked to any particular exception in their Petition. Nevertheless, the Court will review the Board's critical findings of fact and conclusions of law to determine whether they are supported by the evidence and free from errors of law.

Findings of Fact

22.    The Court has thoroughly reviewed the record and concludes that the Board's findings of fact are supported by substantial evidence. The Court will discuss below the critical findings of fact in the Board's Order.

23.    The Board found as fact that Petitioners' work was reviewed by an approved peer review firm, Petitioners failed the peer review, and the outcome of the review was later reviewed and upheld by the Peer Review Committee. (OR 984–986, hereinafter "Board Order," Findings of Fact no. 8.) While Petitioners dispute the failed peer review,[1] they do not dispute that Purvis conducted the review, issued a "fail" on the review, and that the Peer Review Committee upheld the review. In addition, the record contains the System Review Report issued by Purvis on July 29, 2013, which gave Petitioners' Firm "a peer review rating of *fail*." (OR 25–26.) The record also shows that the System Review Report was reviewed and approved by the Peer Review Committee. (Hearing Transcript 73–74; hereinafter, references to the transcript of the Board's hearing will be to "Tr."; OR 56–57.) Finding of fact number 8 is supported by substantial evidence.

---

[1] The Board found as fact that Petitioners "have disputed the results of the peer review." (Board Order, Findings of Fact no. 10.)

24.     The Board also found that the peer review "noted a material departure from Generally Accepted Auditing Standards ('GAAS'). (Board Order, Findings of Fact no. 9.) The Systems Review Report noted that the Firm had failed to comply with "professional standards, including [GAS.]"[2] (OR 25.) The Board's reference to "Generally Accepted Auditing Standards ('GAAS')" appears to be a misnomer. The NCAC refers to "generally accepted auditing standards," 21 NCAC 08N.0403, and to "Government Auditing Standards," 21 NCAC 08N.0409, both of which appear to be applicable to the audit reviewed by Purvis in this case. Petitioners do challenge the applicability of GAS and generally accepted auditing standards to the audit reviewed by Purvis. Whether the Board meant that Purvis's report found that Petitioners failed to comply with generally accepted accounting standards or GAS, both findings are supported by substantial evidence.

25.     The Board found that "[t]he peer review report recommended that [the] Firm reissue the audited financial statement and reports," but that Petitioners "refused to reissue the Audit Client's audited financial statements." (Board Order, Findings of Fact nos. 9 and 10.) Again, Petitioners do not dispute that the Systems Review Report recommended that the Firm reissue the audited client's financial statements, but that Petitioners have refused to do so. (Tr. 144.) Finding of fact number 10 is supported by substantial evidence.

---

[2] The Board's reference to "Generally Accepted Auditing Standards ('GAAS')" appears to be a misnomer. The NCAC refers to "generally accepted auditing standards," 21 NCAC 08N.0403, and to "Government Auditing Standards," 21 NCAC 08N.0409, both of which appear to be applicable to the audit reviewed by Purvis in this case.

26.     The Board also found that expert testimony corroborated the findings of the peer review that Petitioners failed to comply with applicable auditing standards. (Board Order, Findings of Fact no. 12.) Review of the expert's testimony provided at the hearing supports the Board's finding. (Tr. 34–48.) Although Petitioners apparently now wish to challenge this testimony, Johnson did not object to the qualifications of the expert witness nor to the introduction of the expert's testimony at the hearing and waived any such objection. (Tr. 33–34.) *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 50, 362 S.E.2d 578, 582 (1987) ("[D]efendant at no time prior to or during the trial objected to the testimony of [the] witnesses. Failure to object to the admission of evidence constitutes a waiver of the objection precluding an appeal of the matter.").

27.     The Board Order found that "evidence presented at hearing established that [ ] Johnson failed to take adequate steps necessary to fulfill all terms of [the] peer review contract." (Board Order, Findings of Fact no. 11.) The evidence establishes that Johnson signed the Peer Review Contract. (OR 22–24.) Johnson argues that she agreed to pay Purvis $2,500 for the peer review, but that Purvis ultimately charged her more than $2,500. (Tr. 139, 145, 152.) The Peer Review Contract does not contain a specific fee for the review, only that it will be conducted at an hourly rate of $150 with an "estimate of hours" that would result in total fees of $2,250–$3,150. (OR 22–24.) Purvis testified that she has not received any payment from Petitioners for services rendered and that Johnson has refused to pay. (Tr. 79–80.) Findings of fact 11 and 12 are supported by substantial evidence in the record.

28. The evidence also supports the Board's finding that Johnson failed to respond to the Board's inquiries and requests for documents within 21 days, including specifically in correspondence Johnson sent to the Board dated September 4, 2015. (Board Order, Findings of Fact nos. 13, 14.) The evidence was undisputed, and established that on August 28, 2015 the Board sent correspondence to Johnson requesting written information regarding the fee dispute with Purvis and the tax lien. (Tr. 24; OR 101–03.) On September 4, 2015 Johnson sent a letter to the Board stating that the requested documents were "unnecessary and redundant" and that the request to provide the information was "denied." (OR 104.) Again, the evidence supports the Board's factual findings.

29. The Court has reviewed the record and concludes that the Board's findings of fact are supported by substantial evidence.

## Conclusions of Law

30. The Court also reviewed the Board's conclusions of law and concludes that they are supported by the Board's findings of fact and free from errors of law. *Rittelmeyer v. Univ. of N.C. at Chapel Hill*, No. COA15-1228, 2017 N.C. App. LEXIS 178, *15 (Mar. 21, 2017) (noting that "findings of fact are required to support conclusions of law" reached by an agency).

31. The Board concluded that "Johnson's failures to comply with Government Auditing Standards and generally accepted auditing standards constitute violations of 21 NCAC 08N.0409, .0403, and .0212." (Board Order, Conclusions of Law no. 3.) These code sections require a CPA, when providing certain

auditing services, to comply with generally accepted auditing standards and GAS, and to perform the services competently. As discussed above, the record evidence establishes that both Purvis and the Board's expert witness testified that Petitioners failed to comply with generally accepted auditing standards and GAS in performing the audit that was reviewed. The expert witness testified at length regarding the specific deficiencies in the audit performed by Petitioners. Analyzing the record evidence under the required de novo standard, there is substantial evidence to support the Board's conclusion that Petitioners violated the provisions of 21 NCAC 08N.0409, .0403, and .0212 and the Board did not err in reaching its conclusion.

32. The Board also concluded that "Johnson's failure to fulfill the terms of a peer review engagement contract constitutes a violation of 21 NCAC 08N.0203(b)(4)." (Board Order, Conclusions of Law no. 4.) Section 8N.0203 provides, in pertinent part, as follows:

> (a) A CPA shall not engage in conduct discreditable to the accounting profession.
> (b) Prohibited discreditable conduct includes:
>     . . .
>     (4) failing to fulfill the terms of a peer review engagement contract . . .

33. The record evidence establishes that Johnson has not paid Purvis under the terms of the Peer Review Contract. While Johnson contends that Purvis charged her more than agreed, she admits that there was an agreement and that she has not paid Purvis anything. The dispute between Johnson and Purvis did not discharge Petitioner's obligation to pay under the Peer Review Contract. The Board did not err in concluding that Johnson had violated the requirements of 21 NCAC 08N.0203.

34. Finally, the Board concluded that "Johnson's failures to timely respond to the Board staff's inquiries constitutes a violation of 21 NCAC 08N.0206." (Board Order, Conclusions of Law no. 5.) 21 NCAC 08N.0206 provides as follows:

> A CPA shall provide full cooperation in connection with any inquiry made by the Board. Full cooperation includes responding within 21 days to all inquiries of the Board or representatives of the Board and claiming Board correspondence from the U.S. Postal Service, private delivery service, or personal delivery.

As discussed above, evidence in the record establishes that on at least one occasion, Johnson failed to provide requested documents and information to the Board. (OR 104.) The Board did not err in concluding that Johnson violated the requirements of 21 NCAC 08N.0206.

### Additional Exceptions to the Board Order

35. Petitioners also raised an exception to the Board's Order on the grounds that "Petitioners were not afforded an opportunity to dispute noticed fact(s) through the submission of evidence and argument, as required by N.C.G.S. [§] 150B-30." (Pet. 5) Petitioners made no argument in in their brief to support of this exception. Review of the record establishes that Petitioners were allowed to introduce evidence at the hearing, no evidence offered by Petitioners was excluded during the hearing, and Petitioners were not prevented from making any arguments. This exception is without merit.

36. Petitioners argue that the Board's "failure to include in the evidence a subsequent peer review process" was "prejudicial." (Pet. 6.) Petitioner's argument refers to an accelerated second peer review Petitioners completed in September 2014.

The record establishes that Johnson both testified as to the accelerated peer review, and placed in the record a copy of the System Review Report from the accelerated peer review. (Tr. 152, 165, 176, 178; OR 643.) This exception is frivolous and without merit.

37. Petitioners also claim that the Board hearing was "procedurally deficient" because "Petitioners received no advance notice" of and "were not given opportunity to cross-examine" the Board's expert witness. (Pet. 6.) Petitioners made no argument in their brief in support of this exception. Review of the record establishes that Johnson did not raise an objection to the Board's expert testimony at the hearing based on lack of notice or other grounds. (Tr. 33–34.) In addition, Johnson cross-examined the Board's expert witness at the hearing. (Tr. 49–53.) This exception is frivolous and without merit.

## Challenge to Board's Authority

38. Finally, Petitioners make a number of exceptions challenging the legitimacy of the Board's authority, and contend that the Board Order violated federal and state anti-trust protections. Petitioners contend that: (a) "the Board's adoption of the Order was not a legitimate exercise of State authority, being a private action, and [ ] did not constitute State action" (Pet. 4.); (b) the Board Order was a "private action taken under color of law" and was "an ultra vires act" in violation of Petitioners' rights under Article I, Section 19 of the North Carolina Constitution (Pet. 5.); (c) the Board Order was a "prohibited restraint of trade" in violation of the Sherman Act and Article I, Section 34 of the North Carolina Constitution (Pet. 5.); and (d) "the peer review

process employed by the Board was dependent on active market participants and thus [ ] constituted private action." (Pet. 5.) Petitioners argue that because five of the seven members of the Board are licensed, active CPAs,[3] its disciplinary action must have been intended to eliminate Petitioners as competitors in the marketplace, and that the Board's action was an anti-competitive restraint on trade. (Pet'rs' Br. Supp. Pet. Judicial Review 25–26.)

39.     In support of their antitrust argument, Petitioners rely on the United States Supreme Court's decision in *N.C. State. Bd. of Dental Examiners v. FTC*, 135 S. Ct. 1101 (2015). In *Dental Examiners*, the North Carolina State Board of Dental Examiners ("BDE"), like the Board here, was a statutorily-created agency of North Carolina "for the regulation of the practice of dentistry." *Dental Examiners*, 135 S. Ct. at 1107 (citing G.S. § 90-22(b)). Six of the eight members of the BDE were "licensed dentists engaged in the active practice of dentistry." *Id.* at 1108. The BDE issued cease-and-desist letters to non-dentists performing teeth whitening services. *Id.* The evidence showed that the BDE intended to, and did, drive non-dentists out of the teeth whitening business in North Carolina by issuing the letters. *Id.*

40.     The Federal Trade Commission (FTC) brought an administrative action against the BDE for violation of federal antitrust law. The FTC alleged "the [BDE]'s concerted action to exclude nondentists from the market for teeth whitening services

---

[3] G.S. § 93-12 provides in pertinent part that the "Board . . . shall consist of seven members to be appointed by the Governor, five persons to be holders of valid and unrevoked certificates as certified public accountants issued under the provisions of this Chapter and two persons who are not certified public accountants who shall represent the interests of the public at large."

in North Carolina constituted an anticompetitive and unfair method of competition." *Id.* at 1109. The BDE moved to dismiss the administrative action on the grounds that its actions were "state-action" immune from antitrust liability. *Id.* An Administrative Law Judge ("ALJ") denied the motion to dismiss and subsequently held that "the [BDE] had unreasonably restrained trade in violation of antitrust law." *Id.* The Fourth Circuit Court of Appeals affirmed the ALJ's holding. *Id.*

41.     The Supreme Court affirmed the Fourth Circuit, holding that "a state board on which a controlling number of decisionmakers are active market participants in the occupation the board regulates" may invoke state action immunity to a federal anti-trust claim only when two requirements are satisfied: first, the challenged restraint must be clearly articulated and affirmatively expressed as state policy;[4] and second, the policy must be actively supervised by a state official (or state agency) that is not a participant in the market that is being regulated. 135 S. Ct. at 1114. The Supreme Court concluded that the BDE did not enjoy state-action immunity because its issuance of the cease and desist letters was not reviewed or approved by the State of North Carolina, and was not subject to active state supervision. *Id.* at 1116–17.

42.     The holding in *Dental Examiners* has no application to this case. First, Petitioners have not raised federal anti-trust claims against the Board, and state-

---

[4] Petitioners do not contend that North Carolina does not have an expressed public policy interest in regulating the practice of public accountancy.

action immunity is not at issue in this case.[5] Second, the Board's disciplinary action against Petitioners is subject to active supervision by the State through the very judicial review process invoked by Petitioners in this case. The North Carolina Administrative Procedure Act's judicial review process constitutes active state supervision by requiring this Court to substantively review the Board's order and by empowering it to "reverse or modify the decision." G.S. § 150B-51(b), (c). Finally, and most significantly, Petitioners admitted at the hearing that there is no evidence in the record that would support a conclusion that the Board Order or the Board's procedure have impacted competition among CPAs in North Carolina. Petitioners' exceptions regarding the Board's authority and the anti-competitive effect of the Board Order are overruled.

## D. CONCLUSION.

43.    Petitioners have failed to establish that any of their exceptions warrant reversal or modification of the Board Order. The Board Order is AFFIRMED.

SO ORDERED, this the 1st day of May, 2017.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases

---

[5] Exclusive jurisdiction for anti-trust claims brought under the Sherman Act is in the federal courts. *N.C. Chiropractic Ass'n v. Aetna Cas. & Sur. Co.*, 89 N.C. App. 1, 4, 365 S.E.2d 312, 313 (1988).